IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEANNA BARKER, as Personal Representative of
the ESTATE OF ROBERT L. BARKER,

      Plaintiff,

v.                                  Case No. 10-CV-003 JEC/RHS

THE EVANGELICAL LUTHERAN GOOD
SAMARITAN SOCIETY d/b/a Good
Samaritan Society - Socorro,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendant's Motion to Dismiss and to Compel Arbitration* (Doc. 11), filed January 18, 2010.  Having reviewed the parties' submissions and being otherwise fully informed in the premises, the Court finds the Motion is not well-taken and will be DENIED.

## I.    BACKGROUND

Plaintiff, a resident of Grants, New Mexico, is the daughter of Robert L. Barker, who, until his death on November 24, 2008, was a resident of the nursing home and rehabilitation facility Good Samaritan Village in Socorro, New Mexico.  *Notice of Removal* (Doc. 1) at Ex. 1, ¶¶ 2, 15.  Defendant owns and operates the Socorro Good Samaritan Village.  *Id.* at Ex. 3; *Stip. Motion for Substitution of Party* (Doc. 7), filed 1/11/2010.  Plaintiff contends that her father suffered severe dehydration and renal failure as a result of Defendant's alleged abuse and neglect.  *Notice of Removal* (Doc. 1) at Ex. 1, ¶¶13-15.  She asserts claims for negligence, res ipsa loquitur, and unfair trade practices.  *Id.* at Ex. 1, p. 3-7.

Upon Mr. Barker's admission to Good Samaritan Village, his daughter, Carree Gonzales,

signed a 13-page Admission Agreement. *Motion* at Exs. A, B. Page 12 of the Admission

Agreement is titled "Resolution of Legal Disputes" and provides at the outset, in bold type,

"[p]lease note that the Resident's agreement to arbitrate disputes is not a condition of admission

or of continued stay." *Id.* at Ex. B. The Resolution further provides that "[a]ny legal

controversy, dispute, disagreement or claim of any kind arising out of, or related to this

Admission Agreement, or the breach thereof, or, related to the care of stay at the Facility, shall

be settled exclusively by binding arbitration ...." *Id.* Ms. Gonzales initialed the bottom of the

Resolution, acknowledging that she received a copy of the document, and did not check the box

electing "No I do NOT wish to arbitrate disputes." *Id.*

Defendant notes that Ms. Gonzales initially signed the Admission Agreement, including

the Resolution of Legal Disputes page, on February 6, 2007, *before* she had obtained a power of

attorney authorizing her to act on her father's behalf. *Motion* at 2. Audra Rudnik, Defendant's

Social Services Director, therefore arranged for Mr. Barker's wife, Lorraine, to sign the

paperwork as well. *Id.* at Ex. 1, ¶ 8. Carree Gonzales signed the Admission Agreement a second

time after she was appointed as her father's legal guardian, on February 26, 2007. *Id.* at ¶ 9.

Although Ms. Gonzales did not sign the Resolution of Legal Disputes page a second time on

February 26, 2007, she also did not indicate any desire to change her election of arbitration. *See*

*generally id.*

Based on the Admission Agreement, and in particular that Resolution of Legal Disputes

document, Defendant contends that Plaintiff's Complaint should be dismissed in favor of

arbitration pursuant to Rule 12(b)(1) and (6) as well as the Federal Arbitration Act. *Motion* at 1.

Plaintiff opposes dismissal in favor of arbitration, arguing that (1) neither Ms. Gonzales nor

Lorraine Barker had authority to bind Mr. Barker; (2) the alleged arbitration agreement

2

terminated upon Mr. Barker's removal from the facility and transfer to Presbyterian Hospital three days before his death on November 21, 2008; (3) the alleged arbitration agreement violated federal law; and (4) the alleged arbitration agreement is unconscionable and violates public policy. *Pl.'s Resp. to Def.'s Motion to Dismiss and to Compel Arbitration* (Doc. 16), filed February 22, 2010 ("Resp.") at 3.

## II.    LEGAL STANDARD

Both federal law and New Mexico law favor arbitration.  The Federal Arbitration Act ("FAA") declares arbitration agreements affecting commerce to be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  New Mexico's adoption of the Uniform Arbitration Act uses the identical language.  NMSA 1978, § 44-7A-7(a) (providing that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is *valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract*" (emphasis added)).  Federal courts "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" where the agreement is deemed valid.  9 U.S.C. § 4.  When faced with an opposed motion to compel arbitration, New Mexico courts, likewise, "shall proceed summarily to decide the issue and order the parties to arbitrate unless [they] find[] that there is no enforceable agreement to arbitrate."  NMSA 1978, § 44-7A-8(a)(2).

To decide whether an enforceable arbitration agreement exists, courts should apply state contract law.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Piano v. Premier Dist. Co.*, 2005-NMCA-018, ¶ 5, 137 N.M. 57, 107 P.3d 11.  Specifically, there must be "evidence supporting the existence of 'an offer, an acceptance, consideration, and mutual

3

assent.'" *Piano* at ¶ 5 (quoting *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 9, 134 N.M. 558, 80

P.3d 495).

## III.   DISCUSSION

### A.   Valid/Invalid Arbitration Agreement

Plaintiff's only contract-law challenge to the Resolution of Legal Disputes ("arbitration

agreement") is in terms of mutual assent, given that Mr. Barker did not himself execute the

Admission Agreement or the included arbitration agreement.  *Motion* at Exs. B & C.  Both were

signed by his daughter, Carree Gonzales, and his wife, Lorraine Barker.  *Id.*  Although someone

checked a box on the Signatures Page of the Admission Agreement indicating that either Ms.

Gonzales or Ms. Barker was a legal guardian for Mr. Barker, neither party has provided evidence

to indicate that a guardianship relationship existed at the time of their initial signatures.  *Id.* at

Ex. C.

Plaintiff attaches a Durable Power of Attorney purporting to enable Ms. Gonzales to

"handle any and all transactions pertaining to [Mr. Barker's] affairs, both business and

personal," but this document was executed on March 1, 2007—after Ms. Gonzales signed the

Admission Agreement, including the arbitration agreement.  *Resp.* at Ex. 3.  Gonzales also

states, with respect to the Power of Attorney, that she does not believe her father "knew what he

was initialing because he had dementia."  *Resp.* at Ex. 4, ¶ 28.  Lorraine Barker's signature to the

Admission Agreement is also meaningless, according to Ms. Gonzales, because "Lorraine

Barker and my father have been divorced since August 3, 1990, and I told Ms. Rudnick this."

*Id.* at ¶ 22.

Plaintiff therefore contends there is no valid agreement to arbitrate.  *Resp.* at 4.

Defendant argues that the arbitration agreement is valid in spite of Ms. Gonzales' lack of

4

authority to bind Mr. Barker because: (1) Mr. Gonzales had authority pursuant to New Mexico's adoption of the Uniform Health-Care Decisions Act ("HCDA"); (2) Mr. Barker ratified the Admission Agreement, including the arbitration agreement; (3) Mr. Barker is bound as a third-party beneficiary of the Admission Agreement; and (4) Ms. Gonzales cannot simultaneously seek remedies under the Admission Agreement and avoid its arbitration provision.  *Reply* at 2-6.

>    **1.    Neither New Mexico's HCDA nor the New Mexico Administrative Code authorizes Ms. Gonzales to sign an arbitration agreement that is binding upon Mr. Barker.**

Under this statute, an adult may designate a power of attorney for health care, "which may authorize the agent to make any health-care decision the principal could have made." NMSA 1978, § 24-7A-2(B).  Incidentally, neither party has provided a copy of an executed power of attorney for healthcare belonging to Mr. Barker.  The designation must be in writing, and is only effective upon the incapacity of the principal.  NMSA 1978, § 24-7A-2(B) & (C).  As no written power of attorney for health care has been provided in this case, the Court cannot conclude that the HCDA has any relevance here.

In addition to the HCDA, Defendant also cites portions of the New Mexico Administrative Code applicable to nursing homes.  *Reply* at 3.  NMAC provides, under the heading "rights of residents," that

> [n]o person may be admitted to a facility without that person or that person's guardian or designated representative signing an acknowledgement of having received a statement of information before or on the day of admission which contains at least the following information ...

NMAC 7.9.2.22(E)(1).  Defendant argues that this Rule permits a "designated representative," presumably such as Ms. Gonzales, to sign an admission agreement.  *Reply* at 3.  Further, Defendant argues that the Rule "establishes that a 'designated representative' has the authority to

5

enter into agreements that encompass more than mere decisions regarding medical care." *Id.*

The Court finds nothing in the above-cited Rule to indicate that either the common law of contracts and principal-agent relationships or the HCDA is somehow displaced or inapplicable to the arbitration agreement at issue.  Along these lines, a signature to the arbitration agreement is not necessary for a patient's admission or continued stay.  *Motion* at Ex. B.  Thus, NMAC 7.9.2.22(E)(1) does not apply, and the information before the Court is not sufficient for the Court to conclude that Ms. Gonzales' signature to the arbitration agreement is or was binding upon Mr. Barker.  Accordingly, unless Defendant's other arguments are deemed persuasive, the arbitration agreement is not valid.

### 2.      Facts do not support ratification by Mr. Barker.

"A party may lose the power to avoid a voidable contract if he later ratifies it or fails to act in a manner consistent with repudiation of the agreement after learning of the misrepresentation."  *Sisneros v. Citadel Broadcasting Co.*, 2006-NMCA-102, ¶ 26, 140 N.M. 266, 142 P.3d 34.  The question whether a party has ratified a voidable contract is one of fact. *Id.*  Relevant facts include: (1) the wronged party's knowledge of material facts entitling him to void or avoid the contract and (2) his manifestation of intent to ratify the contract, nonetheless. *Romero v. Bank of the Southwest*, 2003-NMCA-124, ¶ 19, 135 N.M. 1, 83 P.3d 288; *Stewart v. Lucero*, 1997-NMSC-027, ¶ 18, 121 N.M. 722, 918 P.2d 1.  *See also Beneficial Finance Co. v. Alarcon*, 112 N.M. 420, 424, 816 P.2d 489, 493 (1991) (holding that "[a] party held to a ratification shall have had full knowledge of all the material facts concerning the transaction" and, additionally, that "an intent to ratify, which is a question of fact, must be shown to establish a ratification" (internal citations omitted)).

The facts before the Court do not support a finding that Mr. Barker ratified the arbitration

agreement in this case. Defendant notes Mr. Barker's March 1, 2007 execution of the Power of Attorney in favor of Ms. Gonzales and argues this demonstrates that Mr. Barker was aware his daughter had admitted him to Good Samaritan. *Reply* at 4. While this may be true, there is no evidence to suggest Mr. Barker had any awareness of the arbitration agreement. Further, Plaintiff raises the question whether Mr. Barker was competent at the time the power of attorney was executed. *Resp.* at Ex. 4, ¶ 28. Since the power of attorney was executed only three days after Ms. Gonzales signed the Admissions Agreement for the second time and only 23 days after her initial signature to the Admissions Agreement and the arbitration agreement contained therein, the record does not support a factual finding that Mr. Barker knew of his daughter's signature to the agreement to arbitrate. Absent evidence of such knowledge, Defendant cannot show that Mr. Barker intended to ratify the agreement.

> **3.     Mr. Barker is not bound as a third-party beneficiary of the arbitration agreement contained within the Admission Agreement.**

A person is a third-party beneficiary of the contract "if the parties to the contract intended to benefit the third party." *Fleet Mortg. Corp. v. Schuster*, 112 N.M. 48, 49, 811 P.2d 81, 82 (1991). The requisite intent can be apparent on the face of the contract. *Id.*

While the Court can see that Mr. Barker was the third-party beneficiary of the Admission Agreement, this does not resolve the question whether he is bound by the arbitration agreement contained within the Admission Agreement. As noted previously herein, Mr. Barker's consent to arbitrate was not required for admission. He or his legal representatives could have expressly refused to arbitrate, and Mr. Barker would still have been admitted pursuant to the Admission Agreement. Mr. Barker, moreover, cannot be characterized as the intended beneficiary of the arbitration agreement because there is no evidence that this agreement was intended to benefit

him.  To the contrary, it might be asserted in this case that the arbitration agreement was intended to benefit only Casa Arena.  Defendant has not demonstrated Mr. Barker is a third-party beneficiary of the arbitration provision in this case.

> **4.      Plaintiff's contractual claims do not render the arbitration agreement valid.**

In this, its fourth argument in support of the arbitration agreement, Defendant argues again that Plaintiff ratified his daughter's signature to the arbitration agreement by accepting the benefits of his admission to Good Samaritan.  *Reply* at 6.  The Court has already found there are not sufficient facts to demonstrate ratification of the arbitration agreement by Mr. Barker.  *See* Part A(2), *infra*.  Moreover, Defendant cannot argue it only provided care to Mr. Barker in reliance upon the arbitration agreement because the arbitration agreement states expressly, in bold typeface, that "the Resident's agreement to arbitrate disputes is not a condition of admission or of continued stay."  *Motion* at Ex. 2, p. 12.

Case law cited by Defendant in further support for this argument is not persuasive.  In *Moffett v. Life Care Ctrs. Of Am.*, the parties agreed that the plaintiff, the patient's son, held both a medical durable power of attorney and a general power of attorney to act on the patient's behalf.  187 P.3d 1140, 1141 (Colo. App. 2008).  Thus, the issue in *Moffett* was whether these powers of attorney authorized only health care decisions by the plaintiff, as opposed to "legal" decisions such as an arbitration provision.  *Id.*  By contrast, Mr. Barker's daughter in the present case appears to have had no power of attorney or other authority to act on her father's behalf at the time of his admission to Defendant's facility.  While Defendant is certainly correct that Ms. Gonzales' apparent lack of authority calls into question the validity of the Admission Agreement as a whole, it does not render the arbitration agreement valid.

8

**IV.     CONCLUSION**

Having found that the arbitration agreement contained with the Admission Agreement is not valid, the Court need not reach the parties' remaining arguments concerning survival of the arbitration provision, federal Medicaid/Medicare law, or unconscionability.

WHEREFORE, for the forgoing reasons, *Defendant's Motion to Dismiss and to Compel Arbitration* (Doc. 11), filed January 18, 2010, is DENIED.

DATED:          June 2, 2010

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:

Gabrielle M. Valdez, Esq.
Albuquerque, NM

Attorneys for Defendant:

Allison Louise Biles, Esq.
Martha G. Brown, Esq.
Albuquerque, NM